WORTHINGTON *v.* MASON.

1. No error is committed in refusing a prayer for instructions consisting of a series of propositions, presented as an entirety, if any of them should not be given to the jury.
2. When error is assigned 'upon the instructions given and those refused, the bill of exceptions must set forth so much of the evidence as tends to prove the facts, out of which the question is raised to which the instructions apply.
3. Where, therefore, the bill of exceptions embodies only the instructions given and those refused, this court will not reverse the judgment.

ERROR to the Circuit Court of the United States for the Eastern District of Arkansas.

This was an action brought by Martha W. Mason against Edward T. Worthington and Isaac M. Worthington, administrators of Elisha Worthington, deceased, to recover for work and labor done and services rendered to the intestate. The jury rendered a verdict for the plaintiff in the sum of $12,000, for which there was judgment, and the administrators sued out this writ of error.

The facts are sufficiently stated in the opinion of the court.

*Mr. Augustus H. Garland* for the plaintiffs in error.

*Mr Albert Pike*, *Mr. Albert N. Sutton*, and *Mr. Luther H. Pike* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The errors assigned in this case relate solely to prayers for instructions refused by the court and to exceptions to its charge. The bill of exceptions shows a paper signed by the defendants' counsel, in which the court is asked to affirm a series " of propositions of law as governing the case," seven in number. They were presented as a whole, refused as a whole, and excepted to in the same manner. If any one of them was rightfully rejected no error was committed, because it was not the duty of the court to do any thing more than pass upon the prayer as an entirety. *Beaver* v. *Taylor et al.*, 93 U. S. 46; *Transportation Line* v. *Hope*, 95 id. 297. We shall presently see why there is no error in the rejection of this prayer.

The charge of the court in full is embodied in the record, and to this the defendant took two exceptions. They are thus stated : —

"And the defendant excepted at the time said charge was given by the court to the following parts thereof, to wit, to so much of said charge as states the law to be that if Colonel Worthington, the owner of the plaintiff as a slave, took the plaintiff to Oberlin, in the State of Ohio, and there placed her in school to be educated, the Constitution and laws of Ohio mediately dissolved the relation of master and slave previously existing between Colonel Worthington and the plaintiff, and that the plaintiff thereby became a free woman, and could never thereafter lawfully be claimed or held by Colonel Worthington as his slave in virtue of his previous ownership of her, and that the subsequent return of the plaintiff from the State of Ohio to the residence of the intestate in this State did not affect her liberty or rights as a free woman which she had acquired by the voluntary action of the intestate and by the operation of the Constitution and laws of the State of Ohio.

" And defendants, also, at the time excepted to the following clause of said instructions, to wit, ' And in considering the question of what would be reasonable and just compensation to the plaintiff for her services, you are at liberty to take into consideration any evidence tending to establish the special agreement heretofore referred to, and if you find such special agreement a contract was made, that is, that the intestate, for the purpose of inducing the plaintiff to remain with him and render the services alleged to have been rendered, agreed to convey or devise to the plaintiff in payment for such services specified portions or parcels of his estate, and that the plaintiff did remain with the intestate and perform the required services until the death of the intestate, then, as throwing light on the transactions between the parties, and as tending to show the value the parties themselves placed upon the services of the plaintiff, you are at liberty to take into consideration the value as disclosed by the evidence of such specific parcels of real estate which you may find the intestate agreed to convey or devise to plaintiff for such services, and considering the special contract (if you find it proven) for this purpose only, it rests

with you under your oaths and judgments, considering all the facts and circumstances in the case disclosed by the evidence, to say what would be a fair, reasonable, and just compensation to the plaintiff for her services, but in no event can you allow the plaintiff a greater sum than the value of the specific property which plaintiff claims was to be conveyed or devised to her therefor.'"

There is in no part of this bill of exceptions any statement of the evidence. There is no statement that any evidence was offered, or that any was objected to. With the exception of the reference to it in the charge of the court, there is nothing to show what was proved, or what any of the evidence tended to prove. The prayers for instruction, therefore, may have been hypothetical and wholly unwarranted by any testimony before the jury.

The exceptions to the charge of the court, just recited, are in the same condition. The principal one, to which the argument of the plaintiffs in error is chiefly directed, is that the court erred in telling the jury that "if Colonel Worthington, the owner of the plaintiff as a slave, took her to Oberlin, in the State of Ohio, and placed her in school to be educated, the Constitution and laws of Ohio immediately dissolved the relation of master and slave previously existing between Colonel Worthington and the plaintiff, and that the plaintiff thereby became a free woman, . . . and her subsequent return to the residence of Worthington in Arkansas did not affect her rights to freedom."

The plaintiff nowhere states in her petition that she was ever the slave of Worthington, though she alleges that she was his natural daughter.

As none of the evidence given or offered on the trial is set out in the bill of exceptions, we cannot presume against the verdict that plaintiff ever was the slave of Worthington.

The defendant in error raises this objection, and the very learned counsel of the plaintiffs in error, who did not try the case below, admits this objection to be fatal to his effort to reverse the judgment, unless we can hold, from language used by the judge in his charge to the jury, that the fact was proved.

It is certainly true that the judge does say, in that part of his charge which relates to that subject, that the former slavery was a conceded fact in the case. His language, in addressing the jury, while discussing the propositions of the defendants' counsel, is as follows: —

" Among the conceded facts in the case are these : That the mother of the plaintiff was a slave, and the property of Colonel Worthington at the date of plaintiff's birth, and that the plaintiff is . the natural daughter of Colonel Worthington. The mother of the plaintiff having been a slave at the date of the plaintiff's birth, it results that she was born a slave, and at her birth was the property of Colonel Worthington, her natural father."

But we do not look to the charge of the judge for the state of the evidence on which that very charge is to be held right or wrong. The judge cannot be permitted to cure the error of his law propositions by assuming as facts what may not have been proved. This very part of the charge was excepted to by the. plaintiffs in error on the ground that its law was erroneous. If the verdict had been for them, the plaintiff below might have excepted, because the facts thus stated were *not* conceded. As we understand the principles on which judgments here are reviewed by writ of error, that error must appear by some ruling on the pleadings, or on a state of facts presented to this court. Those facts, apart from the pleadings, can only be shown here by a special verdict, an agreed statement duly signed and submitted to the court below, or by bill of exceptions. When in the latter, complaint is made of the instructions of the court given or refused, it must be accompanied by a distinct statement of testimony given or offered which raises the question to which the instructions apply.

This is not to be sought for, however, in the comments of the court to the jury on the testimony.

The proof of the facts which make the charge erroneous must be distinctly set forth, or it must appear that evidence was given tending to prove them.

It is not sufficient to show that the judge assumed this in his charge to the jury, it must be certified to this court distinctly under his hand.

It would be very dangerous to permit verdicts fairly rendered to be reversed in this court on the recitation of facts supposed to be proved, found only in a long comment of the judge on the testimony.

This would be to usurp the function of the jury, and the verdict might be set aside in this court because the court below understood the evidence in one way, and the jury in another; or, as in the present case, because the judge was of opinion that a fact was proved which the jury refused to believe.

When, therefore, the question is on the soundness of the judge's law as given to the jury, he must, on his due responsibility, certify to the appellate court, and not to the jury, the evidence on which he pronounced the law.

We are not furnished by counsel with any case precisely in point. Probably no bill of exceptions was ever certified to an appellate court before, which contained nothing but the charge and the objections made to it.

*Judgment affirmed.*