Mr. Justice Hagner
delivered the opinion of the Court:
This suit was brought by Birmingham a blacksmith in the employ of Pettit & Dripps. The declaration alleges that on the 9Ü1 of January 1888, while in the performance of his work at their foundry, an explosion of a steam boiler belonging to the defendants occurred, in consequence of which the plaintiff who was working at a forge in the foundry was seriously injured; that the boiler at the time was in a ruinous condition and entirely unsafe, and was mismanaged by the employees of the defendant in its charge, who were not competent to perform the duty assigned to them.
The defendants pleaded not guilty.
On the trial the plaintiff gave evidence tending to prove the boiler was 21 years old; that after it had been discarded and removed from some hotel, it became the property of defendants and had been for two years exposed to the weather 'without any protection but a coat of paint; and afterwards was put into the foundry of the defendants to run their machinery; that after two years’ service there it was condemned by the inspector, and after it had been repaired it was continued in use there for two years more, when it exploded on the day named in the declaration.
He also gave evidence tending to show the material of the boiler was bad; and he produced before the jury several specimens of tine metal cut out from the boiler, which his witnesses testified showed deterioration of the material of which the boiler was made; the specimens evincing that the metal had become laminated and badly scaled, and was of so perishable a nature that it could easily be removed or scaled with a penknife; that notwithstanding the city regulations requiring boilers to be inspected once a year this boiler had *211 not .been inspected for a year and a half; that the persons who had charge of the boiler when first used by defendant were not licensed engineers; that the person who had charge of it .at the time of the explosion, although a licensed engineer, ¡was also the foreman of the shop, and necessarily so much engrossed by his other business that he had not time to look after the boiler properly. That, on the morning in question, when it was scarcely light, the plaintiff, who was at his forge at the extreme end of the building under the same shed, walked forward to the boiler; his only business with the engine and furnace being to get therefrom a shovel of live coals every morning, with which to kindle the fire in his forge. While standing near the boiler in conversation with other workmen, hé heard, as he says, a noise as of a crack inside the boiler that alarmed him, and without saying anything to the others, he retired to his forge; that he remained there awhile but when he observed the others were lingering about the boiler he started back, and just as he got there the explosion took plp.ce.
. The plaintiff’s evidence further tended to show that when the boiler was last inspected, permission was given to carry 70 pounds of steam and no more; but that there was a pressure of 80 pounds of steam on the boiler on this occasion.
He also testified that on one occasion, some months before the accident, he casually overheard a conversation between Mr. Pettit and some stranger, in which the man said to Mr. Pettit, “ That boiler will burst some of these days,” to which Mr. Pettit replied, “Let her burst; we will build another.”
He then gave evidence tending to show the serious character of his injuries.
After the plaintiff had closed, the defendants offered evidence tending to show the boiler was in good condition; that the defendants never had any reason to suspect otherwise; that no such conversation as was last referred to ever took place; and to show that the boiler was in good condition, they produced a large number of specimens which were *212 cut from the boiler in the presence of the counsel for the plaintiff. The witnesses of the defendants, who professed to be men of skill and were examined as experts in that behalf, testified that these pieces were fair specimens of the condition of the iron and that they were perfectly good and strong; and that there was nothing apparent to indicate any imperfection in the boiler.
Evidence was given tending to prove the defendants had good, competent men in charge of the boiler at the time of the explosion; that although there had not been an inspection of the boiler within twelve months, this failure was not the fault of the defendants, because the inspector came on the 4th of July, when the shops were closed, and had never repeated his visit.
The defendants also gave evidence tending to show, by one of these experts, that in his opinion from all he could see and learn of the explosion, it resulted from some unknown cause — some accident which human skill and diligence could not foresee or guard against — the reason of which was past finding out; that it did not proceed either from the decay of the boiler or the incompetency of the person in charge.
They also gave evidence tending to prove that the plaintiff was not much injured, but that he brought the suit, not so much for his injury, as in revenge for having been discharged when there was a reduction of force.
The plaintiff in his case in chief, had offered in evidence a copy of an act of the legislative assembly creating the office of steam boiler inspector, which declared it should be the duty of those officers to inspect boilers at least once in twelve months; and proved that three persons were appointed as practical engineers, to constitute the board of examiners, under an act of Congress passed in 1887, entitled “ An act to regulate steam engineering in the District of Columbia,” which provided it should be unlawful for any person to act as steam engineer in the District of Columbia who should not have been regularly licensed to do so by the *213 Commissioners of the District. The sixth section of this law imposed a penalty upon any one who should unlawfully employ a steam engineer who had not received a license.
These were admitted without objection, as were the rules established by the Commissioners of the District of Colum.bia — eighteen in number — to regulate the examination and licensing of steam engineers in the District.
The plaintiff then offered the original, as it was said, of a report made by the board of examiners as to the cause of this explosion dated 13th of January, 1888, addressed to the Commissioners of the District and signed by Wilkerson, Duley and Riley, all except Wilkerson being dead. This report was lodged by the examiners in the office of the Commissioners of the District of Columbia, and was brought from their custody into court.
Objection is made on the part of the defendants to our consideration of the admissibility of the report on the ground that it is not properly inserted in the record. The exception instead of setting forth in full this original report to the Commissioners, says, (“here insert it,”) and it is insisted there is no ear-mark on the paper produced at this argument to satisfy the court it is the same paper so offered in evidence.
However commendable it may be to abbreviate bills of exceptions, there must be preserved always some authentication of all the documents referred to in an exception. The alleged report, which we find among the papers in the case, is not marked filed by the clerk in the cause; nor is there the slightest ear-mark to identify it or show it was ever before the jury, although it is marked: “Filed in the office of the Commissioners.” Nevertheless we shall assume that such was the fact and decline to decide this exception upon that point; though, as a matter of practice, the defendant is undoubtedly right. But assuming the report to be correctly in the record, was -it admissible? It is insisted by the plaintiff its admissibility is settled by the cáse of Evanston vs. Gunn, 99 U. S., 666. The matter in controversy in that *214 suit was the character of the weather on a particular day, and a copy of the original record of the Signal Service office was offered to establish that point. This was properly admitted the Supreme Court decided, as within the rule which admits in evidence official registers or books kept by persons in public office, in which they are required, whether by statute or by the nature of their office, to write down particular actions occurring in the course of their public duties or under their personal observation. These books are recognized by law because they belong to a particular custody, from which they are not usually taken, except by special authority, granted only where an inspection of the book is necessary. 1 Greenleaf, 483-4.
But this principle does not include the present offer. This report is not an official register or book kept in the manner stated by the author, nor does it come from the proper custody.
Furthermore, it is deemed essential to the official character of such books that the entries in them should have been made promptly after the transaction; and that they must come from the proper repository. 1 Id., 485.
In this case, the explosion occurred on the 9th, and this report was not made until the 13th day of the month.
Again it is well settled, that when admitted they are admissible only of the facts which they are intended to register, and not as to matters outside of those facts; as for instance, the registry of the baptism of a child which by act of parliament the parson is obliged to make, although evidence of the baptism at the time stated, is not evidence of the age of the child stated by the parson in the course of his certificate. This report is not required to be made by any statute, or by any act of the assembly, or by the regulations of the Commissioners. It is a mere volunteer statement proper enough undoubtedly, but not made under the important conditions which are held be essential by the authorities.
But apart from these objections it is plain this report *215 is not properly admissible in evidence. It professes to contain the statements of a number of witnesses who were said to have been examined; but whether under oath or not does not appear. The examiners certainly had no right to swear them, so the testimony was taken either without the sanction of an oath, or under an extra-judicial oath; and there is nothing to show the entire inquiry was not ex parte so far as the defendants are concerned.
Again, it professes to set forth a decision by the examiners of the very question which was before the jury; and by way of helping them to determine who was responsible for this casualty, the plaintiff proposed to place before the jury the ex parte report of this self-constituted tribunal; not under oath, professing to give their opinion on the' subject. The entire statement is hearsay evidence in its most objectionable form; and cannot rise to. the grade of evidence at all. The jury in the pending case having been sworn to determine that question on the evidence, were not authorized to consider the conclusion or opinion of other persons who had not heard the evidence, or who had no authority to decide the controversy.
The true distinction, it seems to us, is taken in the case of Moore vs. Langdon, 2 Mackey, 131. In that case the plaintiff sued the defendant for flooding his land with the sewage from Le Droit Park, and as tending to prove his case he offered in evidence a letter from the Health' Officer of the District, written some years before to the defendant or those in privity with him, stating there was a nuisance on Moore’s land caused by the sewage flowing upon it from Barbour’s premises. The General Term held the letter was hearsay, and the fact that it was written by a public officer in the discharge of his duties could not make it admissible evidence of the truth of the statements of fact therein set forth.
We think the court below was right in refusing to allow this report to be given in evidence. The court, however, allowed the party who signed it to read it for the purpose *216 of refreshing his memory, and he in fact testified from it, so that no harm was really done by its rejection.
The next exceptions, ten in number, are to the refusal of the court to allow evidence which was offered in rebuttal of defendants’ testimony. That evidence consisted of an offer to have the specimens of iron cut from the boiler after the explosion, which the defendants had introduced, examined by new experts, toi ascertain, their strength; and then to require these new experts to give their theory as to the bursting of this boiler and the causes generally of the bursting of boilers; also to examine them with reference to publications on the subject of the explosion of boilers and to read extracts from those publications; and also to prove that the plaintiff’s experts were not experts.
The objection was made that so much of this evidence as was properly admissible should have been offered in chief; and the court so held, and refused to allow the testimony to be given to the jury.
If this reason were correct it renders it unnecessary for us to examine either of these exceptions in detail. It was decided in Prindle vs. Campbell, 18 D. C., 605, that the question whether fevidence offered at a trial was properly admissible as rebuttal, was one to be decided in the discretion of the court and was not reviewable on appeal. The court there relied on the case of Bannon vs. Warfield, 42 Maryland, 39, where the court stated that the entire question as to the order of proof and under what circumstances evidence should be admitted or rejected, in the absence of some positive rule on the point, must be allowed to rest in the discretion of the court directing the trial as the tribunal best qualified to judge what the justice of the case may require in these respects; and that from the rulings on such points there is no appeal. So in Philadelphia & Trenton R. R. vs. Stimpson, 14 Peters, 463, Mr. Justice Story says: “ Evidence offered in rebuttal might be most material to the defence. The question, then, is whether it was at the time admissible on the part of the defendant as a matter of right, *217 .or whether its admission, was a matter resting in the sound discretion of the court. * * * It is sufficient for us, however, that it was 'a matter of discretion and practice, in respect of which we possess no authority to revise the decision of the Circuit Court.”
Therefore the propriety of the court’s rulings in these ten exceptions is not before us.
The eleventh exception was to the refusal of the court to grant eight prayers, offered as a whole by the plaintiff. The offer is in this language, page 35 of the record:
“ And after all the evidence had been given to the jury, and the case closed on both sides, the plaintiff, by counsel, presented to the court the following prayers for instructions to be given by the court to the jury.”
Then, after setting out the prayers, it concludes with the following:
“After hearing the arguments of counsel, the court denied the said prayers, and refused to give said instructions to the jury, and in place thereof instructed the jury as follows:”
He then excepts to the refusal of the court to grant said prayers, as follows:
“To which ruling of the court, denying and refusing the aforesaid instructions prayed for by the plaintiff, and also to the instructions given by the court in place thereof, the plaintiff, by leave of the court, excepted then and there.”
Afterwards, when the plaintiff excepted to the granting of the defendants’ prayers by the court, he again reserved his exception to the refusal of his own prayers in these words:
“ And now the plaintiff, by counsel, by leave of the court, tenders this, his fourth bill of exceptions to the rulings of the court denying the plaintiff’s prayers, and refusing to give the instructions asked for by the plaintiff as aforesaid.”
It will thus be seen the prayers were offered as a whole or series; were acted upon as a series, and excepted to as a series. The law is quite plain that in such a case if there was anything in either of them which is objectionable, the court has the right to reject them all.
*218 This point has repeatedly been decided. In Harvey vs. Tyler, 2 Wallace, 334, Judge Miller, in delivering the opinion of the court, says: “ It is a fair inference from the bill of exceptions, that each of the series of instructions refused was prayed for and excepted to as a whole.” Assuming this to< be so, he says it is unfair to the trial justice that such a series of prayers should be offered, many of which may be wrong, but some of which may be right, and that his refusal of the whole should be cause for reversal. Such a practice is but a snare laid for the judge to the prejudice of the administration of justice. In Worthington vs. Mason, 101 U. S., 149, and Moulor vs. American Life Insurance Company, 111 U. S., 337, the language used in presenting the prayers is almost identical with that employed in the case before us; and a similar ruling was made.
In Chateaugay Iron Company vs. Blake, 144 U. S., 488, the court said: “ The final matter is concerning the instructions. To the general charge no exceptions were taken. Eighteen special instructions were asked and in respect to them the bill of exceptions stated: ‘The court did not charge either of said requests, except as he had charged. For the refusal of the court to charge in the specific language of said hereinbefore recited request, the defendant’s counsel then and there duly excepted.’ In this way only is an exception taken to the matter of the instruction. But this wholesale exception is not sufficient.”
The next exception is to the action of the court in granting one instruction in place of two, which were offered by the plaintiff, and in granting several prayers asked for by the defendants. We have examined them with care, and think the action of the court was right.
The prayer granted by the court, in lieu of two prayers asked for by the plaintiff, is in these words:
“The jury are instructed that the defendants are not to be held as insurers or guarantors of the absolute soundness and safety of the boiler used by them, but they were bound to exercise all reasonable, care in the selection of the boiler *219 in the first instance, and in the management of it while in their use, and if they neglected to exercise such care in either respect, or failed to employ competent persons or a sufficient force to give proper attention and management, and in consequence of such failure or neglect, the boiler exploded, and the plaintiff was thereby injured, the plaintiff is entitled to recover, unless the jury shall further find that the plaintiff’s own carelessness contributed to his injury, as hereafter explained in instructions numbers three and four, given at the instance of the defendants.”
The plaintiff .insists the court, by the use of the expression: “The defendants are not to be held as insurers or guarantors,” brought to the notice of the jury for the first time the idea of the liability of 'the defendants as insurers or guarantors, and that this irrelevant matter had a tendency to mislead them, as no contention had been made up to that time that they were guarantors. We think the judge could not have been expected to discuss this subject without pointing out this distinction; in view of the testimony given by Wilkerson one of the examiners, to the effect that the explosion did not result from any defect in the iron of which the boiler was composed, or from any mismanagement, but was the result of causes which science could not detect; and also of the testimony of Noyes and Duvall the witnesses of the defendants, who testified on page 21 as experts, “ that explosion may take place in the most perfect boiler, and it may be impossible to account for it”; and that “in their opinion, such was the explosion in this case.”
The first of the defendants’ prayers was to the effect that if the explosion was caused solely by a defect in the boiler, the jury could, nevertheless, render a verdict for the defendants, if they should find the defendants exercised reasonable care in the selection of said boiler in the first instance; unless they further find from the evidence that such defect was known to the defendants or their agents in charge of the boiler, or that by the exercise of reasonable diligence and care the defendants or their agents in charge of the *220 boiler could have discovered such defect before the explosion occurred.
The second prayer states the law correctly as to the exoneration of the defendants where the accident occurred from the conduct of a fellow workman, and is properly expressed.
The third prayer of the defendants was:
“The jury are instructed that if they find from the evidence that the explosion was the result solely of a defect in the boiler or its appurtenances, and that such defect was known to the defendants or their agent or agents in charge of the boiler at the time of the explosion, or might have been known to the defendants .or such agents by the exercise of reasonable diligence and care on their part, they will, nevertheless, render a verdict for the defendants, if they further find from the evidence that prior to the explosion the plaintiff had learned that the boiler was in an unsafe condition, or was liable to explode, or had reasonable cause to believe and did believe that such defect existed, or that such explosion was liable to occur, and that the plaintiff had not made any complaint, or given any notice to the defendants or their agents in charge of the boiler in regard to such defect or liability ,to explode, and had not in any way been led to believe by the defendants or their agent or agents that such defect would be remedied, or such anticipated explosion prevented.”
There was evidence to support this instruction. The plaintiff himself testified that shortly before the explosion he heard a noise as of a crack in the boiler which alarmed him; and yet that he told no one about it. He testified, furthermore, that he overheard a man tell Pettit that some boiler, which he assumed to be this one, would burst some of these days; to which Mr. Pettit made the very humane remark, “Let her burst; we.will build another.” And still he said nothing on the subject.
This is precisely what we have decided in the case of May, where a man working in a gravel bank in the north *221 ern part of the city, testified he was satisfied the'bank would fall and yet gave no warning of the supposed danger, and persisted in digging under the bank, which finally fell on him and injured him. We held that he disentitled himself to recover by his own conduct.
The fourth instruction of the defendants is to the same effect:
“ If the jury find from the evidence that the boiler which exploded, at the time of the explosion and prior thereto, was insufficiently manned, it not having a competent engineer whose sole duty it was to look after the engine and boiler, and that the explosion resulted solely from this cause, but that the plaintiff, at the time of the explosion, and for several months immediately prior thereto, from his own observation while in the employment of the defendants in the same room in which the engine and boiler were situated, knew that there was no person charged with the sole duty of looking after the engine and boiler; and further knew on this account the boiler was not properly watched and guarded, and that the plaintiff, without remonstrance or complaint to the defendants or any of their agents, continued at his work, and unnecessarily placed himself in proximity to the boiler at the moment of the explosion, they will render a verdict for the defendants.”
This, with the three other instructions asked on behalf of the defendants, we think proper, and we see no ground for a reversal in respect of either.
The judge then gave a charge covering the whole ground, to which there aré various exceptions, the consideration of which raises another point of practice. In looking at the charge, we find it is written out in typewriting, but we take it for granted it was delivered ore tenus and afterwards reduced to writing. In the original exception it is stated that all those parts are excepted to which are enclosed in red ink. In the record, nothing of the sort appears, but there is a printed statement to the effect that “ the portions of said charge excepted to are indicated above by being printed in *222 smaller type.” Then we find nearly four pages in small type, of various portions of the charge, to which exception is made, without pointing out the portions deemed to be erroneous. It has been decided again and again that an exception to a charge, generally, is of no avail, if 'there be anything in the charge which is right; and that it is not incumbent upon the court to search through the record to ascertain what the alleged error is, when the party who alleges the error has not taken, the trouble h> point it out.
There are certainly correct statements of law throughout the designated pages, even if they also contain errors.
In Langdon vs. Evans, 3 Mackey, 1, this proposition appears:
“An exception contained the charge of the court and stated ‘and to so much of the said instruction granted by the court, on its own motion, as are contained in brackets,’ plaintiff excepts,” etc. Upwards of two pages of the charge were thus contained in brackets. Held, that the exception being a wholesale one, pointing out no particular remark in the charge,as incorrect, did not properly present to this court any question which it was called upon to examine.
If an extract containing two pages was of such a character that it could not be excepted to generally in Langdon vs. Evans, certainly these numerous extracts from this charge in the present case, some of them containing more than byo pages, and all of them when, taken together, comprehending four or five pages, would be obnoxious to the same objection. We have read the charge and we do not think there is anything in it worthy of being made the ‘subject of a reversal; but as we are not at liberty to go into its examination we refrain.
^ There is one matter much relied upon, presented by one of the plaintiff’s prayers; that if the jury found the defendants had been employing a person who was not a licensed engineer, then they must find a verdict for the plaintiff.
The refusal to grant this prayer was perfectly proper, because it omits all reference to many matters which should *223 have been included; such as the question of contributory negligence. But apart from this objection, the principle of the prayer is incorrect. It would not constitute any ground of recovery in this case that the defendants had at one period violated the law as to the employment of an engineer, although they might thereby have subjected themselves to a liability under the statute. For it would not show culpability of the defendants with respect to the explosion; since the unlicensed engineer might be perfectly competent, and there might be proof that the boiler was managed with perfect propriety.

Finding no error the judgment below is affirmed.

Mr. Justice James :
I want to make a single concurring remark as to the grouping of prayers in an exception. It is sometimes supposed that the difficulty arises when the appellate court is asked to pick out where the error lies, and that they will not examine a group of instructions for that purpose. I think the difficulty really arises at the trial. When counsel offer a series of instructions, it may be understood by the court that the series is interdependent. It is not uncommon to state propositions which depend upon each other, so as to ultimately cover all the ground in a case. It is only fair, therefore, and it is requisite,, that counsel should give the court to understand that they offer these instructions independently, one proposition at a time, and thereby called upon the court to consider each one of them by itself, so that the court may grant some, even if they refuse others. The objection is that the trial court itself is misled when a series of instructions is offered apparently as such. The court then can only receive them all or reject them all; but if the proposition is that the court is to regard these prayers as independent prayers, and each as a propo-' sition which is asked independently, it then becomes the duty of the judge to grant such of the instructions as he conceives to be correct, and to reject the others.
I think that the real point is at that time to be considered by the court, and it does not arise upon the other principle *224 which applies to the charge — that the court of error will not search to find out where something not pointed out by counsel, is objectionable.
Regarded in this way, it is a very material principle that counsel must not offer prayers as a series unless they expect them to be considered in that way.