STERNENBERG et al. v. MAILHOS et ux.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

No. 869.

1. APPEAL—RECORD.

Instructions printed in a transcript on appeal as having been given, or asked and refused, on the trial, but which are not contained in any bill of exceptions, or in any manner authenticated by the trial judge, do not constitute a part of the record in the case.

2. SAME—BILL OF EXCEPTIONS.

To enable an appellate court to review exceptions to the giving or refusal of instructions, the bill of exceptions should contain a sufficient statement of the evidence to show whether or not such instructions were applicable to the case before the jury.

3. SAME—QUESTIONS PRESENTED BY RECORD—PRESUMPTIONS.

Where the record on appeal fails to show that it contains all the evidence, the presumption is that there was evidence which justified the court in refusing to direct a verdict.

4. WRONGFUL DEATH—ACTION BY PARENTS—DAMAGES—LOSS OF SERVICES.

Under the Texas statute (Rev. St. 1895, art. 3017) giving a right of action for actual damages on account of injuries causing the death of any person, when caused by the negligence or wrongful act of another, the parents of a minor may recover in such an action for the loss of services of the deceased during minority, although he was instantaneously killed.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

The following statement is agreed to: On the 16th day of September, 1898, plaintiffs in error were the owners of a steam sawmill and plant located in Hardin county, Tex.; and in connection therewith they owned a tram road running from the mill into the forest, with which they supplied their mill with sawlogs. The tram car was supplied with rolling stock, such as a steam engine or locomotive and log cars. The log cars were about 30 feet in length, and were so constructed that they could be fastened together by means of a coupler on each end. On the last-named date the deceased, Robert Mailhos, was employed by plaintiffs in error in the dual capacity of fireman and brakeman; and, while engaged as a brakeman, in an effort to couple together two cars loaded with logs he was so crushed that he instantly died. On the 20th day of March, 1899, Dominique Mailhos, father of the deceased, for himself and for the use and benefit of his wife, Christie Mailhos, began this suit against

plaintiffs in error for the sum of $12,000 actual damages, and $5,000 exemplary damages. Plaintiffs' first amended original petition, upon which they went to trial, contained two counts as a basis for the recovery of actual damages, as follows: "(1) Plaintiff says that it was negligence on the part of defendant, their agents and servants, in loading and placing said logs on said cars in the manner and position in which they were placed thereon, for he says that on said cars the logs, which were twenty-eight feet, were so loaded and in such a position that the ends of the same projected over the ends of said cars to such an extent that it rendered dangerous an attempt to couple together said cars, as was necessary in the prosecution of said business, as before mentioned, and whereby the lives of the defendants' employés and servants whose duty it was to go between said cars for the purpose of coupling together the same were greatly endangered." The other count for actual damage is as follows: "Plaintiff further alleges that defendants' said roadbed and track at the time when and place where said Robert Mailhos was killed was defective and in bad repair, and in a dangerous and unsafe condition, in that at said place said track was very unlevel, one side being much lower than the other, and that there was not sufficient support, by means of cross-ties or otherwise, under the rails of said track, to keep the same in a steady and safe position and condition, but, on the contrary, the rails of said track at said point, on account of the unlevel position and condition of said track, and on account of the insufficient support under said rails, and consequent depression in the roadbed, were very unsteady, unlevel, loose, and unsafe for the operation of said engine and cars over the same; that on the occasion aforesaid, while plaintiff's said son, in the discharge of his duty as brakeman, and in obedience to the orders of said engineer, was attempting to couple one of said cars to another, then being run back for that purpose by said engineer, and just as said car being run back passed over the rails at said point, and just as the drawheads of said cars were about to meet and join together in the usual and proper manner, whereby the said Robert Mailhos could have made the coupling with safety (he having gone between said cars for the purpose of making said coupling), one of the rails on the lower side of said track, by reason of the unlevel position of said roadbed, and the want of the proper and necessary support under said rails, and depression in said roadbed consequent therefrom, immediately sank down below its usual and proper place and position, whereby and on account of which the drawheads of said cars failed to meet and join together, but, instead, said drawheads passed one under the other, thereby permitting said cars and logs to run and jam together while plaintiffs' said son was between the same, whereby said plaintiffs' son, without fault or negligence on his part, was caught between said cars and logs, and thereby crushed and mangled and instantly killed; that the defendants well knew of the defective, unlevel, unsafe, and dangerous condition of said roadbed and track as before set out, or by the use of ordinary care could have known of the same; that it was no part of the duty of plaintiff's said son to inspect, repair, or in any manner look after the condition of said road, and that his said son at said time was a young, inexperienced boy, of immature judgment, and never knew of the dangers attendant upon his duties in coupling together said cars, and never knew of the dangerous condition of said track and roadbed at said time and place when and where he was killed, and had never been warned by defendants of the same; that, while he had been in the employ of the defendants for several years previous to his death, he had only acted in the capacity of fireman and brakeman, or either, for about ten days previous to his death." The count alleging gross negligence as a predicate for exemplary damages, after the testimony was all in, was abandoned by plaintiffs, and formed no part of the issues submitted to the jury. That count was as follows: "Plaintiff alleges that defendants were grossly negligent in having and keeping in their employ said engineer, Bud Herrington, who, plaintiff alleges, was an incompetent, unskillful, and reckless engineer, and that defendants well knew that said engineer was incompetent, unskillful, and reckless, and unfit for and unsafe to operate and control said engine, but, notwithstanding their knowledge of said fact, said defendants kept said engineer in their employ, and permitted him to operate, run, and control their said engine, and placed the said Robert Mailhos under him, as fireman on said

engine and brakeman on said cars, without warning or in any manner apprising the said Robert Mailhos of the fact that said engineer was incompetent, unskillful, and reckless, which facts were not known to the said Robert Mailhos, who at said time was an inexperienced youth, and of immature judgment." The measure of damages, as shown by plaintiffs' petition, was the value of the deceased's services to plaintiffs, as follows: "Plaintiff further represents that he is about sixty-eight years of age, and his wife, the mother of said Robert Mailhos, is about fifty-eight years of age; that neither of them possesses any means of support, and are both unable to perform manual labor, and are unable to secure other kind of employment, or to earn a livelihood by any means; that he and his wife were, previous to the death of their son, entirely dependent upon him for support and maintenance; that their said son had, previous to his death, contributed all his earnings to the support of his said father and mother, up to the time of his death, and had promised to do so, and would have continued to do so, during the remainder of their lives; that he had been working for the defendants several years previous to his death, and that he had been earning $1.15 per day; that he was an industrious, sober, moral, and intelligent boy, and very careful and attentive in his business, and had every reasonable expectation of being promoted to the position of engineer, or other lucrative position, whereby he would have earned $150 per month, to contribute to plaintiff and his mother for their support and maintenance during the remainder of their lives, and plaintiff and his said wife have a reasonable expectation of living twenty years longer." The defendants' answer contained (1) a general demurrer, (2) a general denial, and (3) a special answer, which, in substance, alleged that the cars which deceased was in the act of coupling were loaded as other cars were usually loaded on defendants' tram road, with which cars, and the method of loading, the deceased was well acquainted, and that he assumed the risks ordinarily incident to the employment, and was well aware of the dangers that were attendant upon and incident to the same; that he was guilty of negligence in standing in an erect attitude while attempting to make the coupling; that it was necessary for him to stoop below the logs in order to make the coupling, and his failure to do so was the direct and proximate cause of his injuries. The plaintiffs' right to recover was made to depend upon the loss of services of the minor, as actual damages, as will appear more fully from the following part of the court's charge to the jury, as follows: "You have the right to consider the age, health, habits, and what he was earning, the probability of increased earnings, and what would fairly compensate them in their expectancy. They do not recover for loss of the company, or grief for loss, of son. Do not understand that to be the case, but it is based on the grounds that he was their servant, and that they were entitled to the servant's wages, and the loss to them is to be considered in such way as will compensate the parents for the loss of same." The jury on June 8, 1899, rendered a verdict for $1,500 in favor of the plaintiffs, upon which judgment was entered. A motion for a new trial was overruled, and defendants were granted 60 days in which to file a bill of exceptions, which bill was filed July 31, 1899, and thereafter this writ was sued out.

J. D. Martin and J. N. Votaw, for plaintiff in error.

J. F. Lanier, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). We find printed in the transcript four propositions labeled, "Charge Asked by Defendants," and indorsed, "Refused. D. E. Bryant, Judge." They are abstract propositions of law, unaccompanied by any statement of fact showing their pertinency to the case on trial; and, while we may presume that they were requests made and ruled on before the jury retired, there is nothing to show that there was any exception taken at the time to the rulings thus made. We also find printed in the transcript a document entitled, "Charge of the

Judge to Jury," verified by the affidavit of one J. R. O'Hara as "a true and correct copy of the charge delivered by the Hon. David E. Bryant to the jury on the trial of the case of Dominique Mailhos v. Olive Sternenberg & Co., tried in the United States circuit court on the 7th and 8th days of June, 1899"; but the same is not set forth in any bill of exceptions, and it does not have the indorsement or any other approval of the judge, nor is there any objection or exception conected with the same. None of the matters referred to above, although contained in the transcript, form any part of the proper record in the case. Blake v. U. S., 33 U. S. App. 376, 18 C. C. A. 117, 71 Fed. 286; Clune v. U. S., 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269. There is one document, denominated "Bill of Exceptions," in the record, filed many days after the trial, and commencing:

"Be it remembered, that the defendants in the above styled and numbered case come now, and except to the judgment of the court rendered in said case upon the verdict of the jury, and the judgment of the court overruling defendants' motion for new trial, for the following reasons."

Then appear some 16 alleged reasons, with more or less argument, and the bill concludes as follows:

"This bill is allowed and approved, with the following explanations and qualifications: As to the grounds of plaintiff's cause of action as construed by me, it embraces the grounds set forth by defendants, and in addition thereto a charge of general bad repair and unsafe condition of defendants' roadbed. As to the exceptions to failure of the court to give certain special instructions asked, I think the general charge, and the charge number six asked by defendants and given by the court, taken together, presented to the jury the law as applied to the facts, without needless reiteration.

"Filed July 31, 1899.                          D. E. Bryant, Judge."

This alleged bill is a combination motion for a new trial and an assignment of errors, and it is defective and insufficient to authorize this court to review any of the alleged errors suggested. The bill does not show any ruling of the court during the trial of the case, except, perhaps, as to the charges actually given and refused; and it is not shown that any ruling of the court was excepted to before the jury retired, or, as for that matter, excepted to at any time prior to the verdict. None of the charges given, nor any of the special charges requested and said to have been refused, are accompanied with such a statement of the evidence as would show whether the charges given or refused were applicable to the case before the jury. See Railway Co. v. Twombley, 100 U. S. 78, 25 L. Ed. 550; Worthington v. Mason, 101 U. S. 149, 25 L. Ed. 848; U. S. v. Carey, 110 U. S. 51, 3 Sup. Ct. 424, 28 L. Ed. 67; Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644; Express Co. v. Malin, 132 U. S. 531, 10 Sup. Ct. 166, 33 L. Ed. 450; Newman v. Iron Co., 25 C. C. A. 382, 80 Fed. 228; Cotton Oil Co. v. Ashburn, 26 C. C. A. 436, 81 Fed. 331.

In short, we find only one assignment of error calling for any attention, and that is not well taken. It is the seventh, and to the effect that the court erred in failing to give a peremptory instruction to find for the defendant. This assignment, as based on the uncontradicted evidence in the case, cannot be considered, for the entire evidence in the case is not certified, and in the absence of the evi-

dence we are bound to presume that there was sufficient evidence before the jury to support the verdict.

The learned counsel for the plaintiffs in error, however, contend that as the death of the minor, Robert Mailhos, was instantaneous, the parents of said Robert Mailhos cannot recover, under the pleadings in this case, for the loss of his services during minority, either at common law or under the statutes of Texas, and cite Railway Co. v. Beall, 91 Tex. 310, 42 S. W. 1054, 41 L. R. A. 807. In that suit the parents were suing to recover damages for the unlawful killing, resulting in the instantaneous death, of a minor son; and two questions were certified by the court of civil appeals, Third supreme judicial district of the state of Texas, to the supreme court of the state. One was as to the right of the parents to recover under the common law, and the other was as to whether the contributory negligence of the deceased could be attributed to the parents, when they had not consented to the employment of their minor son. The court held that the action could not be maintained at common law, and that "since the father's right to recover depends upon the statute, which imputes to him the deceased son's contributory negligence, the second question certified must be answered in the affirmative." The Texas statute (Rev. St. 1895) is as follows:

"Art. 3017. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: (1) When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat, stage coach or other vehicles for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents; and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company. (2) When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

This action seems to be fully authorized by the above statute, and we know of no decision, controlling or otherwise, to the contrary. Diligence of counsel has failed to find any such decision, and we know, as a matter of fact, that such actions have been maintained frequently, and without this particular objection, in both the United States and state courts in Texas. Railway Co. v. Compton, 75 Tex. 667, 13 S. W. 667, is a case where the mother sued the railway company for damages for negligently causing the death of her minor son; and the supreme court of Texas, among other things, said:

"The appellee, being the sole surviving parent of Alexander Compton, was entitled to his services during minority, and hence at common law could have recovered their value during that period, in the event the appellant was found liable for the injury. But it does not follow that this right abridges in any manner her claim for the compensation given by the statute (Rev. St. art. 2899 et seq.). It happens in this particular case that the plaintiff, being the sole surviving parent of the deceased, is entitled to recover, if at all, damages not only for the loss of services during her son's nonage, but also for the loss of any prospective pecuniary benefits which she may have received from him after he attained his majority. She has sued for the whole in the statutory action, as we think she had the right to do, and her right to recover in such action cannot be restricted to the period of her son's minority."

There is no question in the present case as to the right of the parents to recover exemplary damages for the death of a minor child, and therefore Winnt v. Railway Co., 74 Tex. 32, 11 S. W. 907, 5 L. R. A. 172, is not applicable. The judgment of the circuit court is affirmed.