# PHŒNIX LIFE INSURANCE COMPANY *v.* RADDIN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued December 20, 21, 1886.—Decided January 31, 1887.

Answers to questions propounded by insurers in an application for life insurance, unless they are clearly shown by the form of the contract to have been intended by both parties to be warranties, to be strictly complied with, are to be construed as representations, as to which substantial truth in everything material to the risk is all that is required of the applicant.

Where upon the face of an application for life insurance, a direct question of the insurers appears to be not answered at all, or to be imperfectly answered, the issue of the policy without further inquiry is a waiver of the want or imperfection of the answer, and renders the omission to answer more fully immaterial.

A policy of life insurance stated that it was issued and accepted by the assured upon certain express conditions, one of which was that "if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, this policy shall be null and void." The application contained a

number of printed questions " to be answered by the person whose life is proposed to be insured," and " declared that the above are fair and true answers to the foregoing questions," and that it was agreed by the applicant " that this application shall form the basis of the contract for insurance," " and that any untrue or fraudulent answers, or any suppression of facts," should avoid the policy. One of those questions was : "Has any application been made to this or any other company for assurance on the life of the party ? If so, with what result ? What amounts are now-assured on the life of the party, and in what companies?" " To this question the applicant answered, " $10,000, Equitable Life Assurance Society." A policy of that society was in fact the only other existing insurance. *Held,* that the answers were not warranties, but representations ; and that the issue of a policy, without further inquiry, was a waiver of the right of the insurers to require further answers as to the particulars mentioned in this question, and estopped them to set up that the omission, though intentional, to disclose unsuccessful applications for additional insurance was material and avoided the policy.

A bill of exceptions should not contain the whole charge of the court to the jury, but should only state distinctly the several matters of law excepted to.

A bill of exceptions cannot be sustained to an instruction or to a refusal to instruct in matter of law, without showing that there was evidence to which the instruction given or refused was applicable.

The acceptance by insurers of payment of a premium, after they know that there has been a breach of a condition of the policy, is a waiver of the right to avoid the policy for that breach.

Where the declaration in an action on a policy of insurance alleges that the consideration of the contract was the payment of a certain premium at once, and of future annual premiums, and the policy given in evidence is expressed to be made " in consideration of the representations made in the application for this policy " and of the sums paid and to be paid for premiums, and the application contains no promise or agreement of the assured, there is no variance.

THIS was an action at law to recover upon a policy of life insurance issued by the plaintiff in error. Verdict for the plaintiff below, and judgment on the verdict. The defendant below sued out this writ of error. The case is stated in the opinion of the court.

*Mr. M. F. Dickinson, Jr.*, for plaintiff in error, cited : *Woodruff* v. *Wentworth*, 133 Mass. 309 ; *Stone* v. *White*, 8 Gray, 589 ; *Pierce* v. *Charter Oak Insurance Co.*, 138 Mass. 151 ; *Shultz* v. *Mutual Life Insurance Co.*, 6 Fed. Rep. 672 ; *Cazenove* v. *British Assurance Co.*, 6 C. B. N. S. 437 ; *S. C.* on appeal,

29 Law Journal, N. S. (C. P.) 160; *Wright* v. *Equitable Life Assurance Co.,* 50 How. Pr. 367; *Thompson* v. *Weems,* 9 App. Cas. 671; *Jeffries* v. *Life Insurance Co.,* 22 Wall. 47; *Ætna Life Insurance Co.* v. *France,* 91 U. S. 510; *Insurance Co.* v. *Trefz,* 104 U. S. 197; *Carpenter* v. *Providence Washington Insurance Co.,* 16 Pet. 495; *London Assurance Co.* v. *Mansel,* 16 Ch. D. 363; *McDonald* v. *Law Union Insurance Co.,* L. R. 9 Q. B. 328; *Edington* v. *Ætna Life Insurance Co.,* 77 N. Y. 564; *S. C.* 100 N. Y. 536; *Rivaz* v. *Gerussi,* 6 Q. B. D. 222; *McLanahan* v. *Universal Insurance Co.,* 1 Pet. 170; *New York Life Insurance Co.* v. *Fletcher,* 117 U. S. 519; *McCoy* v. *Metropolitan Insurance Co.,* 133 Mass. 82; *Batchelder* v. *Queen Insurance Co.,* 135 Mass. 449; *Fowkes* v. *Manchester & London Insurance Co.,* 3 Fost. & Fin. 440; *S. C.* 3 B. & S. 915; *Dilleber* v. *Home Life Insurance Co.,* 69 N. Y. 256; *Connecticut Life Insurance Co.* v. *Union Trust Co.,* 112 U. S. 250; *N. Y. Mutual Life Insurance Co.* v. *Armstrong,* 117 U. S. 591; *Moulor* v. *Insurance Co.,* 101 U. S. 708; *In re General Provincial Life Assurance Co.,* 18 Weekly Reporter, 396; *American Insurance Co.* v. *Mahone,* 56 Miss. 180; *Roehner* v. *Knickerbocker Life Insurance Co.,* 63 N. Y. 160; *Railroad Co.* v. *Dubois,* 12 Wall. 47; *Taylor* v. *Ely,* 25 Conn. 250; *Insurance Co.* v. *Wolff,* 95 U. S. 326; *Devens* v. *Mechanics' & Traders' Insurance Co.,* 83 N. Y. 168; *Bennécke* v. *Insurance Co.,* 105 U. S. 355.

*Mr. Robert M. Morse, Jr.* (*Mr. William M. Richardson* was with him on the brief), for defendant in error, cited: *Hampshire Bank* v. *Billings,* 17 Pick. 87; *Stone* v. *White,* 8 Gray, 589; *American Insurance Co.* v. *Mahone,* 56 Miss. 180; *Connecticut Insurance Co.* v. *Luchs,* 108 U. S. 498; *Liberty Hall Association* v. *Housatonic Insurance Co.,* 7 Gray, 261; *Bardwell* v. *Conway Insurance Co.,* 122 Mass. 90; *Hall* v. *Peoples' Insurance Co.,* 6 Gray, 185; *Lorillard Fire Insurance Co.* v. *McCulloch,* 21 Ohio St. 176; *Towne* v. *Fitchburg Insurance Co.,* 7 Allen, 51; *Brennan* v. *Security Insurance Co.,* 4 Daly, 296; *Fowkes* v. *Manchester Insurance Co.,* 3 Fost. & Fin. 440; *Hoddson* v. *Guardian Life Insurance Co.,*

97 Mass. 144; *Frost* v. *Saratoga Insurance Co.*, 5 Denio, 154; *S. C.* 49 Am. Dec. 234; *Ames* v. *New York Union Insurance Co.*, 14 N. Y. 253; *Shearman* v. *Niagara Insurance Co.*, 46 N. Y. 526; *Bevin* v. *Conn. Insurance Co.*, 23 Conn. 244; *Bouton* v. *American Insurance Co.*, 25 Conn. 542; *Walsh* v. *Ætna Insurance Co.*, 30 Iowa, 133; *Insurance Co.* v. *Slockbower*, 26 Penn. St. 199; *North Berwick Co.* v. *New England Fire and Marine Co.*, 52 Maine, 336; *Reynolds* v. *Commercial Insurance Co.*, 47 N. Y. 597; *Kennedy* v. *Green*, 3 Myl. & K. 699; *Viele* v. *Germania Insurance Co.*, 26 Iowa, 9; *Von Bories* v. *United Insurance Co.*, 8 Bush, 133; *Westchester Co.* v. *Earle*, 33 Mich. 143; *Williamsburg Co.* v. *Cary*, 83 Ill. 453; *Anson* v. *Winnesheils Co.*, 23 Iowa, 84; *Jewett* v. *Home Insurance Co.*, 29 Iowa, 562; *Security Co.* v. *Fay*, 22 Mich. 467; *Horwitz* v. *Equitable Insurance Co.*, 40 Missouri, 557; *Pitney* v. *Glens Falls Co.*, 65 N. Y. 6; *Pechner* v. *Phœnix Insurance Co.*, 65 N. Y. 195; *Hadley* v. *Fire Ins. Co.*, 55 N. H. 110; *Fishbeck* v. *Phœnix Insurance Co.*, 54 Cal. 422.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action brought by Sewell Raddin, and prosecuted by his administrator, upon a policy of life insurance, dated April 25, 1872, the material parts of which were as follows :

"This policy of assurance witnesseth, that the Phœnix Mutual Life Insurance Company of Hartford, Conn., in consideration of the representations made to them in the application for this policy, and of the sum of one hundred and fifty-two dollars and ten cents, to them duly paid by Sewell Raddin, father, and of the semi-annual payment of a like amount on or before the twenty-fifth day of April and October in every year during the continuance of this policy, do assure the life of Charles E. Raddin, of Lynn, in the county of Essex, State of Massachusetts, in the amount of ten thousand dollars, for the term of his natural life."

"This policy is issued and accepted by the assured upon the following express conditions and agreements," namely, among

others, that "if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, this policy shall be null and void."

The application was signed by Sewell Raddin, both for his son and for himself, and contained twenty-nine printed "questions to be answered by the person whose life is proposed to be insured, and which form the basis of the contract," three of which, with the written answers to them, and the concluding paragraph of the application, were as follows :

"10. Is the party addicted to the habitual use of spirituous liquors or opium ?                  No.

"28. Has any application been made to this or any other company for assurance on the life of the party ? If so, with what result ? What amounts are now assured on the life of the party, and in what companies ? If already assured in this company, state the No. of policy ?        $10,000, Equitable Life Assurance Society.

"29. Is the party and the applicant aware that any untrue or fraudulent answers to the above queries, or any suppression of facts in regard to the health, habits, or circumstances of the party to be assured, will vitiate the policy, and forfeit all payments thereon ?                  Yes.

"It is hereby declared, that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that this application shall form the basis of the contract for insurance, which contract shall be completed only by delivery of policy, and that any untrue or fraudulent answers, any suppression of facts, or should the applicant become, as to habits, so far different from

condition now represented to be in, as to make the risk more than ordinarily hazardous, or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payments made thereon."

It was admitted at the trial that all premiums were paid as they fell due; that Charles E. Raddin died July 18, 1881; and that at the date of this policy he had an endowment policy in the Equitable Life Assurance Society for $10,000, which was afterwards paid to him.

One of the defences relied on at the trial was that the answer to question 28 in the application was untrue, and that there was a fraudulent suppression of facts material to the insurance, because the plaintiff, by his answer to that question, "$10,000, Equitable Life Assurance Society," intended to have the defendant understand that the only application which had been made to any other company for assurance upon the life of his son was one made to the Equitable Life Assurance Society, upon which that society had issued a policy of $10,000; whereas in fact the plaintiff, within three weeks before the application for the policy in suit, had made applications to that society and to the New York Life Insurance Company for additional insurance upon the son's life, each of which had been declined.

The defendant offered to prove that the two other applications were made and declined as alleged, and that the facts as to the making and the rejection of both those applications were known to the plaintiff, and intentionally concealed by him, at the time of his application to the defendant; and upon these offers of proof asked the court to rule, First, that the answer to question 28 was untrue, and therefore no recovery could be had on this policy; Second, that there was a suppression of facts by the plaintiff, and therefore he could not recover; and Third, "that the answer to question 28 must be construed to be an answer to all the clauses of that question, and as such was misleading, and amounted to a concealment of facts which the defendant was entitled to know and the plaintiff was bound to communicate."

But the court excluded all the evidence so offered, declined to give any of the rulings asked for, and ruled "that if the answer to one of the interrogatories of question 28 was true, there would be no breach of the warranty; that the failure to answer the other interrogatories of question 28 was no breach of the contract; and that if the company took the defective application, it would be a waiver on their part of the answers to the other interrogatories of that question."

The jury having returned a verdict for the plaintiff in the full amount of the policy, the defendant's exceptions to the refusal to rule as requested and to the rulings aforesaid present the principal question in the case.

The rules of law which govern the decision of this question are well settled, and the only difficulty is in applying those rules to the facts before us.

Answers to questions propounded by the insurers in an application for insurance, unless they are clearly shown by the form of the contract to have been intended by both parties to be warranties, to be strictly and literally complied with, are to be construed as representations, as to which substantial truth in everything material to the risk is all that is required of the applicant. *Moulor* v. *American Ins. Co.*, 111 U. S. 335; *Campbell* v. *New England Ins. Co.*, 98 Mass. 381; *Thomson* v. *Weems*, 9 App. Cas. 671.

The misrepresentation or concealment by the assured of any material fact entitles the insurers to avoid the policy. But the parties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material. Whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insurers as part of the basis of the contract. *Carpenter* v. *Providence Washington Ins. Co.*, 16 Pet. 495; *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47; *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 484; *Macdonald* v. *Law Union Ins. Co.*, L. R. 9 Q. B. 328; *Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564, and 100 N. Y. 536.

Where an answer of the applicant to a direct question of

the insurers purports to be a complete answer to the question, any substantial misstatement or omission in the answer avoids a policy issued on the faith of the application. *Cazenove* v. *British Equitable Assurance Co.*, 29 Law Journal N. S. (C. P.) 160, affirming *S. C.* 6 C. B. N. S. 437. But where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial. *Connecticut Ins. Co.* v. *Luchs*, 108 U. S. 498; *Hall* v. *People's Ins. Co.*, 6 Gray, 185; *Lorillard Ins. Co.* v. *McCulloch*, 21 Ohio St. 176; *American Ins. Co.* v. *Mahone*, 56 Mississippi, 180; *Carson* v. *Jersey City Ins. Co.*, 14 Vroom, 300, and 15 Vroom, 210; *Lebanon Ins. Co.* v. *Kepler*, 106 Penn. St. 28.

The distinction between an answer apparently complete, but in fact incomplete and therefore untrue, and an answer manifestly incomplete, and as such accepted by the insurers, may be illustrated by two cases of fire insurance, which are governed by the same rules in this respect as cases of life insurance. If one applying for insurance upon a building against fire is asked whether the property is incumbered, and for what amount, and in his answer discloses one mortgage, when in fact there are two, the policy issued thereon is avoided. *Towne* v. *Fitchburg Ins. Co.*, 7 Allen, 51. But if to the same question he merely answers that the property is incumbered, without stating the amount of incumbrances, the issue of the policy without further inquiry is a waiver of the omission to state the amount. *Nichols* v. *Fayette Ins. Co.*, 1 Allen, 63.

In the contract before us, the answers in the application are nowhere called warranties, or made part of the contract. In the policy those answers and the concluding paragraph of the application are referred to only as "the declarations or statements upon the faith of which this policy is issued;" and in the concluding paragraph of the application the answers are declared to be "fair and true answers to the foregoing questions," and to "form the basis of the contract for insurance." They must therefore be considered, not as warranties which

are part of the contract, but as representations collateral to the contract, and on which it is based.

The 28th printed question in the application consists of four successive interrogatories, as follows: " Has any application been made to this or any other company for assurance on the life of the party? If so, with what result? What amounts are now assured on the life of the party, and in what companies? If already assured in this company, state the number of policy." The only answer written opposite this question is " $10,000, Equitable Life Assurance Society."

The question being printed in very small type, the answer is written in a single line midway of the opposite space, evidently in order to prevent the ends of the letters from extending above or below that space; and its position with regard to that space, and to the several interrogatories combined in the question, does not appear to us to have any bearing upon the construction and effect of the answer.

But the four interrogatories grouped together in one question, and all relating to the subject of other insurance, would naturally be understood as all tending to one object, the ascertaining of the amount of such insurance. The answer in its form is responsive, not to the first and second interrogatories, but to the third interrogatory only, and fully and truly answers that interrogatory by stating the existing amount of prior insurance and in what company, and thus renders the fourth interrogatory irrelevant. If the insurers, after being thus truly and fully informed of the amount and the place of prior insurance, considered it material to know whether any unsuccessful applications had been made for additional insurance, they should either have repeated the first two interrogatories, or have put further questions. The legal effect of issuing a policy upon the answer as it stood was to waive their right of requiring further answers as to the particulars mentioned in the 28th question, to determine that it was immaterial, for the purposes of their contract, whether any unsuccessful applications had been made, and to estop them to set up the omission to disclose such applications as a ground for avoiding the policy. The insurers, having thus conclu-

sively elected to treat that omission as immaterial, could not afterwards make it material by proving that it was intentional.

The case of *London Assurance* v. *Mansel*, 11 Ch. D. 363, on which the insurers relied at the argument, did not arise on a question including several interrogatories as to whether another application had been made, and with what result, and the amount of existing insurance, and in what company. But the application or proposal contained two separate questions; the first, whether a proposal had been made at any other office, and, if so, where; the second, whether it was accepted at the ordinary premium, or at an increased premium, or declined; and contained no third question or interrogatory as to the amount of existing insurance, and in what company. The single answer to both questions was, "Insured now in two offices for £16,000 at ordinary rates. Policies effected last year." There being no specific interrogatory as to the amount of existing insurance, that answer could apply only to the question whether a proposal had been made, or to the question whether it had been accepted, and at what rates, or declined; and as applied to either of those questions it was in fact, but not upon its face, incomplete and therefore untrue. As applied to the first question, it disclosed only some and not all of the proposals which had in fact been made; and as applied to the second question, it disclosed only the proposals which had been accepted, and not those which had been declined, though the question distinctly embraced both. That case is thus clearly distinguished in its facts from the case at bar. So much of the remarks of Sir George Jessel, M. R., in delivering judgment, as implies that an insurance company is not bound to look with the greatest attention at the answers of an applicant to the great number of questions framed by the company or its agents, and that the intentional omission of the insured to answer a question put to him is a concealment which will avoid a policy issued without further inquiry, can hardly be reconciled with the uniform current of American decisions.

For these reasons, our conclusion upon this branch of the case is that there was no error, of which the company had a

right to complain, either in the refusals to rule, or in the rulings made.

Another defence relied on at the trial was that after the issue of the policy Charles E. Raddin became, as to habits of using spirituous liquors, so far different from the condition he was represented to be in at the time of the application, as to make the risk more than ordinarily hazardous, and thus to render the policy null and void.

The bill of exceptions, after showing that in support of this defence the defendant introduced evidence, which it is now unnecessary to state, because the exception to its admission was abandoned at the argument, contains this statement: "In rebuttal of the foregoing defence of change of habits on the part of the assured after the issuing of the policy, the plaintiff not only denied the fact, but offered evidence tending to show that the defendant was informed of such change in habits prior to its receipt of the last premium, and that it gave no notice to Sewell Raddin of its intention to cancel the policy. Evidence to the contrary was introduced by the defendant; and the questions of change of habits, knowledge thereof by the company, notice to Sewell Raddin, receipt of premium after knowledge, and waiver, were all submitted to the jury."

The whole charge to the jury is made part of the bill of exceptions, in accordance with a practice which this court for more than half a century has emphatically condemned, and has by repeated decisions as well as by express rule, constantly endeavored to suppress. As long ago as 1822, Mr. Justice Story, speaking for the whole court, said: "The charge is spread *in extenso* upon the record, a practice which is unnecessary and inconvenient, and may give rise to minute criticisms and observations upon points incidentally introduced, for purposes of argument or illustration, and by no means essential to the merits of the case." *Evans* v. *Eaton*, 7 Wheat. 356, 426, 427. Opinions to the same effect have been delivered in many later cases. *Carver* v. *Jackson*, 4 Pet. 1, 80, 81 ; *Ex parte Crane*, 5 Pet. 190 ; *Conard* v. *Pacific Ins. Co.*, 6 Pet. 262, 280 ; *Magniac* v. *Thompson*, 7 Pet. 348, 390 ; *Gregg* v. *Sayre*, 8 Pet. 244, 251 ; *Stimpson* v. *West Chester Co.*, 3 How. 553 ; *Zeller* v. *Eck-*

*ert,* 4 How. 289, 297; *United States* v. *Rindskopf,* 105 U. S. 418. And in 1832, this court adopted a rule, which, with slight verbal changes, has ever since remained in force, by which it ·was ordered, not only that the judges of the Circuit and District Courts should not allow any bill of exceptions containing the charge of the court at large to the jury in trials at common law, upon any ground of exception to the whole of such charge; but also, "that the party excepting be required to state distinctly the several matters of law in such charge to which he excepts; and that such matters of law, and those only, be inserted in the bill of exceptions, and allowed by the court." Rule 38 of 1832, 6 Pet. iv and 1 How. xxxiv; Rule 4 of 1858 and 1884, 21 How. vi and 108 U. S. 574.

The disregard of this rule has caused the principal embarrassment in dealing with the question now under consideration.

The substance of the instructions to the jury on this part of the case was as follows: The judge directed the jury that if they should find that the assured was addicted to the habitual use of spirituous liquors at the date of the policy, or his habits afterwards changed in this respect so as to make the risk more than ordinarily hazardous, they would consider whether there had been a waiver on the part of the insurance company. The judge then told the jury that the plaintiff not only claimed that any misrepresentation as to the habits of the assured, or failure to inform the company of a change in those habits, had been waived by the company by accepting payment of a premium on or about April 25, 1881, after it had knowledge of the habits of the assured, or of the change in those habits; but further claimed that mere silence of the company, after knowledge of such change in habits, was a waiver of the violation of the provision of the policy. And the judge did charge the jury upon both the supposed grounds of waiver, instructing them that if the defendant had knowledge of the change in the habits of the assured before receiving the premium of April 25, 1881, the acceptance of that premium would be a waiver, which would estop the company to set up that the policy was forfeited for a breach of that provision; and further instructing them that if the company, having knowledge of the change in

the habits of the assured, did not give notice to the plaintiff of that change, and he was prejudiced in any way by the failure of the company to give such a notice, and by reason of this silence of the company did any act, or omitted to do any act, which prejudiced him, there was a like waiver and estoppel on the part of the company.

The bill of exceptions, after setting out the charge of the court, proceeds as follows: "To so much of the foregoing instructions as related to notice and waiver the defendant excepted, and asked the court to instruct the jury — 1. That no notice of the cancellation of the policy or termination of the risk was necessary, if the jury find the fact to be that the habits of the assured had so far changed from the condition represented to be in as to make the risk more than ordinarily hazardous. 2. That even if any notice were necessary at all, under any circumstances, until the company had completed its investigations, if the company acted in good faith and with reasonable despatch, they were not bound to give the notice; also that the receipt of the last premium, April 25, 1881, pending such investigations, would not amount to a waiver, especially if a much larger sum was tendered back when full knowledge was had by the company. The court refused these requests, and the defendant excepted thereto."

But the bill of exceptions does not state what the investigations and the tender were which are mentioned in the second request for instructions, or at what time or for what purpose either was made; nor does it show that any evidence had been introduced of prejudice to the plaintiff in consequence of the defendant's silence, or any other evidence upon the question of waiver, except that already mentioned, namely, that "the plaintiff offered evidence tending to show that the defendant was informed of such change in habits prior to its receipt of the last premium, and that it gave no notice to Sewell Raddin of its intention to cancel the policy," and that "evidence to the contrary was introduced by the defendant."

It does not therefore appear that the instructions requested, or the instructions given, except so far as they related to the effect of accepting payment of the last premium with previous

knowledge of the habits of the assured, had any application to the case on trial. Except as just mentioned, the bill of exceptions is in the same condition as that of which Mr. Justice Miller delivering a former judgment of this court, said: "There is in no part of this bill of exceptions any statement of the evidence. There is no statement that any evidence was offered, or that any was objected to. With the exception of the reference to it in the charge of the court, there is nothing to show what was proved, or what any of the evidence tended to prove. The prayers for instruction, therefore, may have been hypothetical and wholly unwarranted by any testimony before the jury." *Worthington* v. *Mason*, 101 U. S. 149, 151.

It follows that the only question upon the instructions of the court to the jury, which is open to the defendant on this bill of exceptions, is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens. *Insurance Co.* v. *Wolff*, 95 U. S. 326; *Wing* v. *Harvey*, 5 D., M. & G. 265; *Frost* v. *Saratoga Ins. Co.*, 5 Denio, 154; *S. C.* 49 Am. Dec. 234; *Bevin* v. *Connecticut Ins. Co.*, 23 Conn. 244; *Insurance Co.* v. *Slockbower*, 26 Penn. Stat. 199; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9; *Hodsdon* v. *Guardian Ins. Co.*, 97 Mass. 144.

The only objection remaining to be considered is that of variance between the declaration and the evidence, which is thus stated in the bill of exceptions: "After the plaintiff had rested, the defendant asked the court to rule that there was a variance between the declaration and the proof, inasmuch as the declaration stated the consideration of the contract to be the payment of the sum of $152.10 and of an annual premium of $304.20, while the policy showed the consideration to be the representations made in the application as well as payment

of the aforesaid sums of money, and that an amendment to the declaration was necessary; but this the court declined to rule, to which the defendant excepted."

But the "consideration," in the legal sense of the word, of a contract is the *quid pro quo*, that which the party to whom a promise is made does or agrees to do in exchange for the promise. In a contract of insurance, the promise of the insurer is to pay a certain amount of money upon certain conditions; and the consideration on the part of the assured is his payment of the whole premium at the inception of the contract, or his payment of part then and his agreement to pay the rest at certain periods while it continues in force. In the present case, at least, the application is collateral to the contract, and contains no promise or agreement of the assured. The statements in the application are only representations upon which the promise of the insurer is based, and conditions limiting the obligation which he assumes. If they are false, there is a misrepresentation, or a breach of condition, which prevents the obligation of the insurer from ever attaching, or brings it to an end; but there is no breach of any contract or promise on the part of the assured, for he has made none. In short, the statements in this application limit the liability of the insurer, but they create no liability on the part of the assured. The expression at the beginning of the policy, that the insurance is made "in consideration of the representations made in the application for this policy," and of certain sums paid and to be paid for premiums, does not make those representations part of the consideration, in the technical sense, or render it necessary or proper to plead them as such.

*Judgment affirmed.*