## DOSSETT v. FRANKLIN LIFE INS. CO.
### (No. 552–4291.)

(Commission of Appeals of Texas, Section B. Nov. 18, 1925.)

1. **Insurance ⬦377(1)—Right of beneficiary to recover notwithstanding false statements of material facts predicated on conception of waiver.**

Right of beneficiary in insurance policy to recover, notwithstanding false statements of material facts, must be predicated on conception of waiver growing out of knowledge on part of insurer of falsity of particular statement.

2. **Insurance ⬦377(2)—Knowledge of falsity of one statement not notice another statement is false.**

Insurance company cannot be charged with notice that, because one statement is false, another statement may be, or is, false.

3. **Contracts ⬦94(1)—One relying on misstatement of fact may have relief when not waived; "fraud."**

"Fraud" consisting of misstatement of fact, which induces another, relying thereon, to act to his hurt, will always afford relief where not waived.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraud.]

4. **Insurance ⬦377(2)—Partial knowledge of fraud held to preclude defense of fraud.**

In action on life policy, contention of insurer, who had refused payment because of fraud in misstatement of facts in procuring policy, that its knowledge of falsity of statements made, being only partial, would not relieve taint of fraud, *held* without merit.

5. **Insurance ⬦377(1)—Misstatement of facts by insured are no defense, where insurer did not rely on such statements but conducted independent investigation of its own.**

In action on life policy where evidence showed that, although insured had made misstatements in procuring of policy, yet insurer had knowledge of falsity of such statements and did not rely on them, but conducted independent investigation of its own, *held* that recovery on policy could be had.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by Mrs. Jennie D. B. Dossett against the Franklin Life Insurance Company, consolidated with suit by insurance company to cancel policies. Judgment for plaintiff Dossett was reversed in the Court of Civil Appeals (265 S. W. 259), and she brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

J. D. Williamson, of St. Louis, Mo., and Sleeper, Boynton & Kendall, of Waco, for plaintiff in error.

Williams, Williams, McClellan & Lincoln, of Waco, for defendant in error.

SPEER, J. This case is before us upon writ of error to the judgment of the Court of Civil Appeals for the Tenth District, seeking to reverse the judgment of that court wherein it reversed the trial court and rendered judgment in favor of the defendant in error, Franklin Life Insurance Company. 265 S. W. 259.

The suit was instituted by plaintiff in error, Jennie D. B. Dossett, as beneficiary, against defendant in error, to recover upon three standard twenty-year pay insurance policies on the life of A. J. Dossett, her deceased husband, aggregating $25,000. This suit was consolidated with one previously brought by the company to cancel these policies.

The trial court rendered judgment for Mrs. Dossett, and the Court of Civil Appeals, in reversing that judgment and rendering judgment for the insurance company, sustained the contention that the policies were void and unenforceable because of false and fraudulent answers made, and information concealed, by A. J. Dossett in the answers which he made in his application for the insurance, with reference to the following questions:

"Question 1 (for convenience). I have not applied to any company, association, society, or agent for insurance without having received a policy of the exact kind and amount applied for. (If there is any exception or qualification to this statement, applicant must give full particulars.)" To which he answered: "No."

"Question 11. Have you ever been examined for insurance without receiving the policy applied for? (If yes, give date and name of company or society.)" Answer: "Yes; Bankers' Life, 1910."

"Question No. 13. Have you now, or have you ever, had any of the following diseases or ailments: Albumen or sugar in urine, any disease of the kidney or bladder?" Answer: "No."

"Question No. 14. Give names and addresses of all physicians who have attended or prescribed for you or whom you have consulted during the past five years, together with nature and date of ailments." Answer: "No sickness."

"Question No. 15. Have you had any sickness, ailment, or injuries since childhood that you have not named or described above? (If yes, give the dates and details.)" Answer: "No." "Doctor A. C. Scott, Temple, Tex., makes general physical examination twice each year; has never found any trouble."

The trial court made very full findings of fact, and the Court of Civil Appeals has not set aside any of those findings, nor has it made any other findings inconsistent therewith, but it has held that, as matter of law, under the findings and undisputed facts the insurance company was entitled to the relief which it granted. The conclusion of the Court of Civil Appeals rests upon the facts

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that the answer to question 1 was false, in that A. J. Dossett had applied for insurance and been rejected, or obtained policies different from the one applied for, in several instances mentioned by the court; that the answer to question No. 11 was incomplete, in that he had been examined by all those companies and been rejected, except the New York Life, which had issued him a substandard policy; that his answer to question No. 13 was untrue, in that he had been examined by physicians for insurance companies, and otherwise, and had been rejected or informed that he had albumen and casts in his urine; that his answers to question No. 14 and No. 15 were false, the particulars thereof being set out at length.

As above stated, the findings of the trial court were voluminous, and need not be stated in full. It will be sufficient to state them generally and briefly, since they have not been attacked, and only their legal sufficiency to support the judgment for the plaintiff is questioned.

The court found that prior to the issuance of the policies involved, the company knew that A. J. Dossett had on several occasions been rejected for insurance, and further that the company knew before issuing the policies that Dossett had been several times examined and rejected by insurance companies because of albumen and casts in his urine. The court further found that the insurance company did not rely upon the statements of the deceased in the issuance of the policies, but that, with knowledge of the fact that he had had albumen and casts in his urine, made its own independent investigation and relied upon the examinations made by its own physicians and the opinion of its own medical director. It further found that none of the answers complained of were material to the risk in view of the information that the company had, and that the company did not rely upon any of said answers as written, but relied upon its own independent investigations, and further in substance and effect found that the answers to questions 14 and 15 were true.

The Court of Civil Appeals has correctly stated some general principles applicable to cases like this, but a failure to properly apply those principles led it into error in reversing the judgment of the trial court. For instance, that court says:

"If the insurance company is aware of the fact that the answers made by the applicant for insurance are false, it cannot, if it issues the policy and accepts the premiums, plead the falsity of said statements as a defense or bar to recovery."

Yet this precise thing has been allowed by the judgment of that court. Authorities might be multiplied indefinitely in support of the principle thus announced. It is unquestionably sound. Phœnix Mutual, etc., Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644; Garrett v. Burleson, 25 Tex. Supp. 41;

Cresap v. Manor, 63 Tex. 485; Insurance Company v. Hanna, 81 Tex. 487, 17 S. W. 35; Sun Life Insurance Co. v. Phillips (Tex. Civ. App.) 70 S. W. 603; Mutual Reserve Fund Life Association v. Sullivan (Tex. Civ. App.) 29 S. W. 190; Liverpool, etc., Co. v. Ende, 65 Tex. 118; Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721; Wortman v. Young (Tex. Com. App.) 235 S. W. 559; Guarantee, etc., Co. v. Evert (Tex. Civ. App.) 178 S. W. 643 (w. ref.); The Homesteaders v. Stapp (Tex. Civ. App.) 205 S. W. 743 (w. ref.).

The Court of Civil Appeals furthermore said:

"Where the questions asked in any application for insurance policy are unquestionably material and the answers are admittedly untrue, it is the duty of the court to render a judgment for the insurance company."

This is only qualifiedly true. It is but a half-truth. Such judgment would not follow if the insurance company in such case knew of the falsity of the answers or otherwise did not rely upon their truth. These qualifications themselves generally constitute fact questions of controlling importance, counteracting any consideration of materiality or falsity of the answers given. The Court of Civil Appeals further said:

"Unless the applicant reveals all the material facts about which he is asked, it does not lie in his mouth to say that because the company knew part of his answers were untrue, it was charged with notice that all of his answers might be untrue. If the applicant makes statements that are material, which are untrue, it would void the policy, unless the company knew that those identical statements were untrue."

[1, 2] We agree with this statement of the law, but the scope of the rule does not embrace this case. The right of the beneficiary to recover, notwithstanding false statements of material facts, must be predicated upon the conception of waiver growing out of a knowledge, on the part of the company, of the falsity of the particular answer or answers. It would not do to charge the company with any sort of notice that, because one answer is false, therefore another answer may be or is false. The test always is, to avoid the effect of fraud as to a material fact upon the score of waiver, the company must know the identical statement as made is untrue. But where the company does know of such falsity, there is no dissolving vice in the attempted fraud. It is not fraud.

[3] Fraud consisting of a misstatement of fact which induces another to act to his hurt will always afford relief, where not waived, upon the very sound principle that one who would otherwise not have acted but for the fraud should not be bound for the benefit of the one committing such fraud. But this, of course, necessarily presupposes that he relied upon the statement or concealment constituting the fraud, otherwise there is no excuse relieving his agreement to be bound.

If for any reason one does not rely upon the false statement or concealment, but should act independently thereof, he certainly is not deceived. It is inconceivable that one can be deceived by a statement which he knows to be false. Deception necessarily follows belief. There can be no belief of a known falsehood; it is a contradiction of terms to say so. So that, however material and however false the answers of A. J. Dossett may have been, it being established that the insurance company, before it issued and delivered the policies, knew the statements and answers were false, the judgment cannot be in its favor upon those grounds.

[4] The argument is made by counsel for defendant in error, and its consideration appears to have had weight with the Court of Civil Appeals, that because the insurance company did not know the full extent of the falsity of Dossett's answers—that is, the number and names of the companies examining him and declining to issue their policies—its knowledge of the falsity of the answers was therefore partial and would not relieve the taint of the fraud. But this contention is not sound, and such conclusion cannot be supported. The reasoning is specious. The very essence of a fraud which vitiates is this: It is believed to be true. That is, that the statement relied upon is absolutely true in the sense in which it is intended to be understood; in the present case, we may say unqualifiedly true. The notice or knowledge which waives, in legal contemplation, must be of the falsity as to the identical fact represented to be true. This notice or knowledge must be as broad, as comprehensive, as extensive, as the representation. This means that the knowledge of falsity must extend to so much of the representation as is material. Both the knowledge and the representation must pertain to the same material fact. To effect a cure the antidote of knowledge must be identical with the poison of misrepresentation.

Now question 13 is simple and calls for a categorical answer—yes or no. It is answered, "No." Assuming that the answer is false (though the trial court finds otherwise), the deception which could have followed this answer consisted in the company's believing that a truthful answer had been given. The exact opposite would be that the answer is untrue. The answer is false, of course, if it is not true, and being untrue, is false for every purpose in this case. It can make no difference whether albumen had been discovered in his urine one time or a hundred times, if he had ever had any albumen in his urine his answer was false.

The insurance company, according to the findings and the undisputed evidence, knew that on several occasions albumen and casts had been found in his urine. It knew, therefore, for all purposes of reliance thereon, the answer was false. It could not thereafter be heard to say it believed the answer or relied on it at all. To permit the company to do so, and thereby to avoid the payment of its policies, would be to encourage a fraud rather than to prevent one. It would be to permit the company to capitalize its own knowledge that the deceased had attempted unsuccessfully to deceive it. To permit such a recovery would be virtually to allow the company to benefit by its self-inflicted injuries. Clearly after it knew of the falsity of the deceased's answers it did not rely upon them, and its delivery of the policies was the result of its own further investigation, and rested wholly within its own discretion, uninfluenced by the false answers.

Upon discovering the utter falsity of the deceased's answers, the insurance company was free, thereafter, to pursue the inquiry or not as it preferred; but certainly thereafter its conclusion to issue and deliver the policies was not because of such answers, but in spite of them. It has voluntarily brought upon itself the injury, and the maxim, "Volenti non fit injuria," applies with full force.

This precise principle has been discussed fully by this section of the Commission by Presiding Judge Powell in Waggoner v. Zundelowitz, supra.

What we have said with respect to the falsity of the answer to question No. 13 applies equally to the answer to question No. 1, and to each and every other question the answer to which was false. The trial court having found that the answers to questions No. 14 and No. 15 were true and those findings being attacked, those matters are ended.

In our conclusion we have not found it necessary to call to our aid the well-recognized rule of law that forfeitures are not favored, and the further rule of construction that the insurance company having selected the language of its questions the same will be strictly construed against it, so as to avoid the consequence of the false answer if the answer itself can be held to be fairly responsive to any reasonable interpretation of the question. Bills v. Hibernia, etc., Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121; Phœnix Mutual, etc., Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644; Reppond v. National Life, etc., Co., 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, 15 Ann. Cas. 618.

[5] It being established that the company knew of the falsity of all untruthful answers in the application, and did not rely upon any of them, and that it instituted an independent investigation of its own, upon the results of which it did rely, in issuing and delivering the policies in question, the Court of Civil Appeals' holding that the law required a judgment for the Insurance Company was wrong, and its judgment should be reversed, and the judgment of the trial court should be affirmed. Poindexter v. Receiver, 101 Tex. 326, 107 S. W. 42; Cox v. Railway Co., 111 Tex.

8, 222 S. W. 964; West Lumber Co. v. Goodrich, 113 Tex. 14, 223 S. W. 183; Marshburn v. Stewart (Tex. Com. App.) 256 S. W. 577.

Our inspection of the record discloses no error requiring the reversal of the judgment of the trial court. We accordingly recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the district court be, in all respects, affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

PIERSON, J., not sitting.