John C. **ODOM**, Administrator of the Estate of Larry Dean Koestler, Deceased, et al., Appellants,

v.

The **INSURANCE COMPANY OF the STATE OF PENNSYLVANIA,** Appellee.

No. 11672.

Court of Civil Appeals of Texas.

Austin.

May 14, 1969.

Rehearing Denied June 4, 1969.

 

Bryan, Wilson, Olson & Stem, William M. Harman, III, Waco, for appellants.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., John H. Marks, Jr., Dallas, for appellee.

HUGHES, Justice.

This suit was brought by the Insurance Company of the State of Pennsylvania for a declaratory judgment declaring that a policy of liability insurance issued by it to Larry Dean Koestler was void from its inception and that it had no obligation to defend actions brought against the administrator of Larry Dean Koestler, deceased, by William L. Hardy, Barbara Maycock, surviving spouse of Bennie Lee Maycock, deceased, for damages arising out of an automobile collision allegedly caused by the negligence of Larry Dean Koestler. The parties or their legal representatives, named above, were named defendants as well as Criterion Insurance Company, alleged to be a necessary party.

Summary judgment was granted declaring the insurance policy issued by appellee null, void and of no force and effect from its inception. The basis for this ruling was that the insured, Larry Dean Koestler, had made material false statements in his application for the insurance.

Insured answered "No" to questions on the insurance application inquiring whether he had been convicted of a moving violation in the past 36 months and whether he had been involved in an accident in the past 36 months. It is undisputed that these statements were false in that insured during such 36 month period had been convicted of seven moving traffic violations and was involved in two automobile accidents.

Appellants have two points the first of which is that summary judgment was improper because an issue of fact as to whether the admittedly false statements were made willfully and with the design to deceive or defraud.

The application signed by the insured [1] and incorporated in and made a part of the policy contained this provision:

"I hereby warrant the truth of the above statements and I declare that I have not withheld any information whatever which might tend in any way to increase the risk of the company or influence the acceptance of this application, additionally, I warrant that my automobile will be operated only by persons holding valid drivers' licenses. I understand that any false statement by me will constitute a breach of warranty and cause the policy to be void as provided by the conditions of the policy. I agree that this application shall be the basis of the policy between me and the company."

The policy issued pursuant to this application contained these provisions:

## "THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### PHILADELPHIA, PA.

(A stock insurance company, herein called the company)

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy: * * *

By acceptance of this policy, the insured named in Item 1 of the Declarations agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

* * * * * *

Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

Appellant cites Clark v. National Life and Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820, (1947) and Occidental Life Ins. Co. of California v. King, 365 S.W.2d 815, Tex.Civ.App. San Antonio, writ ref., n. r e. (1963), both life insurance cases, to sustain this point.

In King, a summary judgment case, the question on the application falsely answered was whether applicant had other insurance. The Court held that whether this misrepresentation was material to the risk or actually contributed to the contingency or event on which the policy became due and payable was a question of fact not conclusively established by the record. Art. 21.16, Vernon's Ann.Tex.Civ.St. of the Insurance Code, Vol. 14A was cited. This Art. provides, "Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

In Clark the questions alleged to have been falsely answered pertained to the health of the applicant. The case was tried to a jury but no issues were submit-

---

I. The application was actually signed by the wife of the insured. No question is presented regarding her authority to act as agent for her husband.

ted regarding the applicant's health. The Court held that since the evidence did not conclusively show that applicant knew he was in bad health this was a matter for the jury and since the company did not discharge its burden of procuring a favorable jury finding on this issue the insured was entitled to recover.

■ It is our opinion that these cases do not sustain appellant here for the reason that it appears, as a matter of law, that the insured knew that the answers he gave to the questions stated above were false and that, as a matter of law, such questions and answers were material to the risk assumed by appellee in the policy.

While subjective evidence of the state of mind of Larry Dean Koestler when he made application for this insurance is now impossible to obtain it is inconceivable that he did not know the falsity of the answers given by him to the questions shown above. If he was a normal human being, and there is no evidence that he was not, he could not have failed to remember that he was involved in two accidents and that he had been convicted of seven moving violations within the past thirty six months. Such answers were, therefore, knowingly false as a matter of law.

In Harris v. Allstate Ins. Co., 249 S.W. 2d 669, Tex.Civ.App. Texarkana, writ ref. (1952) the Court stated:

"In 29 Am.Jur., p. 475, § 586, it is said: 'A statement by an applicant for insurance as to prior applications or rejections is material as a matter of law, and if false, avoids the policy regardless of the good faith of the applicant and regardless of whether the statement constitutes actual fraud. A fortiori, where such statement is agreed by the parties to be material, or where its truthfulness is warranted or made a condition of the validity of the policy, a false statement that the insured has not applied or been rejected for other insurance avoids the policy, even in the absence of knowledge

on the part of the applicant that he has been rejected.'· Cited by the text as supporting the above is State Mutual Life Ins. Co. v. Rosenberry, Tex.Com.App., 213 S.W. 242."

We quote the following from Inter-Ocean Insurance Co. v. Ross, 315 S.W.2d 71, Tex.Civ.App. Fort Worth, no writ (1958):

"The test of materiality is said to be whether knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk, or in fixing the amount of premiums. 24–B Tex.Jur. p. 417, sec. 187; 45 C.J.S. Insurance § 595, subd. (3), p. 406; Aetna Life Ins. Co. v. King, Tex. Civ.App., 208 S.W. 348, writ refused. 'If the applicant makes statements that are material, which are untrue, it will avoid the policy, unless the company knew that those identical statements were untrue.' Franklin Life Ins. Co. v. Dossett, Tex.Civ.App., 265 .S.W. 259, 262. Although this case was reversed by the Commission of Appeals on other grounds, the above statement of the law was expressly approved. Dossett v. Franklin Life Ins. Co., Tex.Com.App., 276 S.W. 1097. See, also, Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S.W. 635; Indiana & Ohio Live Stock Ins. Co. v. Smith, Tex.Civ.App., 157 S.W. 755, writ refused. * * *

In Maniatis v. Texas Mut. Life Ins. Co., Tex.Civ.App., 90 S.W.2d 936, it was held that where the application states that representations were made for the purpose of obtaining the insurance, it is not necessary to prove that a false representation was intentionally made for the purpose of deceiving the insurer. To the same effect is Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202."

We hold, as a matter of law, that the false answers given by the applicant to the questions indicated were material in that true answers would have influenced the

insurer in deciding whether to accept the risk assumed by it in the policy issued. For the reasons stated, appellee was entitled to void the policy involved unless it is estopped as point two asserts.

Appellants' plea of estoppel is based on the deposition of George Tucker, an insurance man, who testified he had "brokered" policies for appellee, including the policy in suit. This deposition was made a part of appellants' controverting affidavit to appellee's motion for summary judgment and the testimony given by Mr. Tucker was not negated.

Mr. Tucker testified that he was authorized by Mr. Pete Loreno special agent for appellee to write business for the company through the Armored Insurance Agency on a brokerage agreement until such time as his appointment as recording agent for the company could be completed.

Mrs. Doris Mashburn testified that she owned and operated the Armored Insurance Agency and was an agent for appellee; that she was instructed by two representatives of appellee, Mr. Pete Louriero and Herb Kline, to furnish certain insurance agents, including Mr. Tucker, with certain insurance forms to write insurance until they could be furnished with supplies from New York, and that she furnished forms to Mr. Tucker. Mrs. Mashburn testified that she received none of the commissions earned by Mr. Tucker, and, in fact, had nothing to do with him, and that she did not know until after Larry Dean Koestler had been killed that appellee had issued a policy of insurance to him.

Mr. Tucker also represented Pioneer Insurance Company and he had written a liability policy for Mr. Koestler which, to his knowledge, the company had cancelled. This was prior to issuance of the policy in suit. We quote from the testimony of Mr. Tucker:

"Q Prior to this cancellation notice you received from the Pioneer on Mr. Koestler's liability policy, did you ascertain or learn that he had been charged with driving while intoxicated in Bell County?

A He came to my office and told me that he had been charged with a DWI and to the best of my rememberance, I said to him, I said, 'Well, I know about it. You also had a wreck or an accident or something.' And he said, 'Yeah, but,' he said, 'I'm pleading not guilty and I have an attorney and I'm going to fight this thing.'

Q This was prior to the time of the cancellation, is that correct?

A I can't remember whether the company had already started the cancellation or not, I don't know.

Q How did you happen to learn about this driving while intoxicated charge against Mr. Koestler?

A He came to my office and walked in and said, 'In case,' he said 'I need an SR-22, will Pioneer Casualty write it?'

Q What did you tell him?

A I said, 'It's very doubtful.' I said, 'It's not the normal practice that a company will stay on a risk once a man has a DWI, unless it's forced on them through the assigned risk plan.'

*   *   *   *   *   *

Q Do you recall approximately how long it was, after this cancellation, before he came in your office again about another policy?

A He made several trips to my office in reference about his insurance and the fact that his car had a lien against it, and that he had to have collision insurance, and I informed him that I didn't have anybody, right at that time, that would write it, but that if I run across anybody that would take it, that I would instruct him or advise him at such time when I did find somebody that would take it.

\* \* \* \* \* \*

Well, did you, in fact, after all this occurred, issue a policy of insurance to Mr. Larry Dean Koestler on March 26, 1965?

A  If that is the date that shows on the policy, then I did take the information and issue it to him, yes sir.

\* \* \* \* \* \*

Q  Who actually came in there to talk to you about it?  Was it Mrs. Koestler or Mr. Koestler?

A  Both of them came in at one time, but he had previously been in a time or two before and she had previously been in with him and talked about it also.

\* \* \* \* \* \*

Q  Had they instructed you to attempt to find a company that would write them?

A  The best of my recollection, he said, 'Well, if you find someone,' he says, 'that will write me the collision and the comprehensive in one company,' he says, 'I'd like to have it that way.'  And I says, 'Well, if I ever find such a company that will write it that way, I says, 'I'll let you know.'

\* \* \* \* \* \*

Q  And who is that application signed by, Mr. Koestler or Mrs. Koestler?

A  It was signed by her.

Q  George, state whether or not you, in fact, filled in those answers to the questions for her or did she do that herself?

A  I typed them in.

Q  Did you propound the questions to her as you typed them?  Did you ask her the questions, or did you just fill it in yourself?

A  I don't remember just definitely what was said in that respect, Mr. Car-lile.  On each individual question, I'm sure \* \* \*

Q  You actually knew the Koestlers before by previous dealings?

A  Yes sir.

Q  Did you recognize her as being the same Koestler that had recently had the policy cancelled through Pioneer?

A  Well, I knew it was the same folks, yes sir.

Q  You knew about the DWI; you knew about the accident?

A  I knew that they had had an accident and I knew that they had had the DWI.

Q  Notwithstanding that, you went ahead and issued the policy?

A  Well, yes.

Q  Would you tell us what you did with that particular application after you took it that day from Mrs. Koestler?

A  I handed it to Mrs. Koestler, and I said, 'Mrs. Koestler,' I says, 'this is the application for insurance and it is also the policy.'  And, I says, 'This will require your signature.'  And I handed it across the desk to her and I don't remember whether she read it or whether she just signed it or how long she looked at it, I do not recall.

Q  What did you do with it then?

A  Well, after it was signed, it was given back to me.  I put all copies of it, with the exception of a little tear sheet that I have in my record that just shows the amount of the premium and the name, and I don't recall if I hand carried it or mailed it to Armored Insurance Agency, but the agreement was that I could either hand carry it or mail it, but I got it over to the Armored Insurance Agency.

Did you deliver this promptly at this time to Mrs. Koestler?

A  And I gave Mrs. Koestler her copy.

\*  \*  \*  \*  \*  \*

Q  You didn't see fit to make any further inquiries before you wrote this other policy through the Pennsylvania Insurance Company?

A  The only thing I did, I just wouldn't write him any insurance until I had talked to Mr. Loreno out there at that meeting, and he said go ahead and write it, that a man was not considered.

\*  \*  \*  \*  \*  \*

Q  Mr. Tucker, on one point. On this DWI matter. When you wrote the policy, state whether or not it was your understanding that it was still pending or was he already convicted? Tell the Court what your understanding was.

A  Well, it was my understanding, after talking with Mr. Loreno, out there at Mr. Mashburn's at that meeting that night, in reference to writing this physical damage liability case, that until such time that Mr. Koestler was found guilty of this charge that was entered against him in the Motor Vehicle Records, that he was not guilty of the offense and it was not to be considered an offense and so forth, and that the answer to it was 'No' and forget about it and go on and write it and that's why I wrote the insurance."

If appellee, as distinguished from Mr. Tucker, knew that the answers contained in the application to material questions were false before or when the policy was issued then appellee would be estopped to rely on their falsity as a defense to a suit on the policy. Dossett v. Franklin Life Ins. Co., 276 S.W. 1097, Tex.Comm. of App. (1925).

The question presented here is whether the knowledge Mr. Tucker had that answers to certain material questions were false is to be imputed to appellee.

Appellants cite no authorities and offer no help in disposing of this question.

Preliminary to a decision of the principal issue we must determine the status of Mr. Tucker, i. e. whether he is a broker, general agent or soliciting or special agent.

We are satisfied that Mr. Tucker was not merely a broker and the agent of Mr. Koestler only. He was furnished insurance forms by appellee and authorized to "write insurance," to take applications for insurance and to issue and deliver the policies and to collect the premiums. While Mr. Tucker may have been the agent of Koestler in finding a company to insure him he was the agent of the company in all other nonfraudulent aspects of this transaction. See 43 Am.Jur.2d, Insurance, Secs. 149–150, pp. 203–206.

We are also satisfied that Mr. Tucker was not a general agent of appellee. In 43 Am.Jur.2d, Sec. 458, p. 215, it is said, "Broadly speaking, one must be regarded as the general agent of an insurance company if he is authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies."

In Morrison v. Insurance Co., 69 Tex. 353, 6 S.W. 605 (1887) the Court said, "This agent of appellee was shown to have and exercise power to 'issue and cancel policies for it, make renewals and indorsements of other insurance when necessary, and collect premiums.' The appellee is a corporation resident in the state of Pennsylvania, and incorporated under its laws. Such an agent was a general agent, whose knowledge was the knowledge of the company whose agent he was, and by whose acts, within the scope of his powers, his principal would be bound."

It is not shown here that Mr. Tucker had authority to cancel policies or to agree upon or settle the terms of insurance or to make renewals. He was not a general agent.

Mr. Tucker had less authority than a general agent and more authority than the normal soliciting agent in that he could take the application and issue the policy himself. We would call Mr. Tucker a special agent. See Sec. 159, 43 Am.Jur.2d, Insurance.

■ The general rule is that the knowledge of an agent acquired in the performance of his duties is imputable to his principal. There is an exception to this rule, applicable here, which is stated in Centennial Mutual Life Association v. Parham, 80 Tex. 518, 16 S.W. 316 as follows:

"It is ordinarily true that a principal is affected with notice of such facts as come to the knowledge of his agent in the course of his business. When an agent, however, ceases to act for his principal in good faith and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person, or the common interest of himself and that other, in fraud of his principal, then the person who so avails himself of the services of such an agent can not claim that his act or his knowledge in reference to matters to which the fraudulent collusion relates are binding on the person intended to be defrauded. In such a case, the agent *pro hac vice* becomes the agent of the person he collusively serves.

In [National Life] Insurance Co. [of United States] v. Minch, 53 N.Y. [144] 150, it was claimed that the medical examiner for the company, in collusion with an applicant, made a false statement as to her condition, to obtain a policy; and in that case, as in this, it was claimed that the company was chargeable with the knowledge of the true condition of the applicant because its examiner knew it; but in disposing of the question the court held that: 'If Dr. Potter, the husband, and deceased knew that the latter had an incurable cancer, and acted in concert in procuring the policy, the plaintiffs were entitled to recover; even if the company would otherwise be chargeable with the knowledge of Dr. Potter as their agent, they would be relieved from it under such circumstances. If a person colludes with an agent to cheat the principal the latter is not responsible for the acts or knowledge of the agent. The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent, to further their own frauds upon the principal.' "

See Southern Farm Bureau Casualty Ins. Co. v. Allen, 388 F.2d 126, 5th Cir. (1967) and authorities there cited.

■ We also hold that under this record, appellants are not entitled to prevail under the rule stated in Texas State Mut. Fire Ins. Co. v. Richbourg, 257 S.W. 1089, Tex.Comm. of App. (1924) as follows:

"But, whatever may be the general rule as to estoppel by reason of the agent's acts, it has no application to this case. It is the established law of this state, and of many states, that where false statements and representations, which are warranted to be true, are written into an application for insurance by the agent, and the applicant knows or has the means of knowing that such statements are contained in the application, and are not true, the insurance company is not precluded from avoiding the policy where it has been conditioned upon such false representations."

The judgment of the trial court is affirmed.

Affirmed.